IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | § |
| Plaintiff, | § § § |
| | § Civil Action No. 2:17-CV-209-D |
| VS. | § § |
| TONY EUGENE LYON, et al., | § § |
| Defendants. | § |

MEMORANDUM OPINION
AND ORDER

On December 3, 2018 the United States Magistrate Judge entered her findings, conclusions, and recommendation (sometimes referred to as the "FCR"), in which she recommends that the court grant the government's motion for judgment on the pleadings and deny as moot defendant Tanya Lea Lyon's ("Tanya's") motion for partial summary judgment and defendant Midwestern Cattle Marketing, LLC's ("MCM's") motion for equitable distribution of foreclosure proceeds among all of Tony Lyon's victims. MCM and Tanya object to the FCR. After making an independent review of the pleadings, files, and records in this case, the magistrate judge's FCR, and MCM's and Tanya's objections, the court holds that the findings, conclusions, and recommendation of the magistrate judge are correct in part. It is therefore ordered that the findings, conclusions, and recommendation of the magistrate judge are adopted in part, and, to the extent the court disagrees with the magistrate judge's FCR, the pending motions are decided as set out in this memorandum opinion and order.

I

On April 8, 2002 defendant Tony Eugene Lyon ("Tony") pleaded guilty to making a false statement to a bank, in violation of 18 U.S.C. § 1014. On July 12, 2002 Judge Robinson, sitting in the Amarillo Division of this court, sentenced Tony to 37 months' imprisonment, and, under the Mandatory Victims Restitution Act ("MVRA"), 18 U.S.C. § 3663A *et seq.*, ordered him to pay restitution in the sum of $6,082,754.29 ("First Restitution Order") for disbursement to Bank of America, the victim of the offense. After the judgment was entered, the government in 2002 and 2003 recorded liens in favor of the United States on all property belonging to Tony.

More than one decade later, on November 4, 2016, Tony pleaded guilty to wire fraud, in violation of 18 U.S.C. § 1343. On March 24, 2017 Judge McBryde, sitting in the Fort Worth Division of this court, sentenced Tony to a term of 120 months' imprisonment, and, under the MVRA, ordered him to pay restitution in the sum of $5,137,449.00 ("Second Restitution Order") for disbursement to MCM, the victim of the offense. After the judgment was entered, the government on March 30, 2017 recorded liens against Tony's property in the amount set forth in the Second Restitution Order, again in favor of the United States.[1]

As of October 5, 2017 Tony's outstanding restitution balance under the First Restitution Order was $5,619,156.97, and he still owed the full amount of restitution under

---

[1]On February 13, 2017—after Tony pleaded guilty but before he was sentenced and judgment was entered in the criminal case—MCM recorded abstracts of judgment against Tony's property based on a state-court civil judgment in the amount of $17,193,765.02.

the Second Restitution Order. On October 26, 2017 the government filed a complaint to foreclose liens against Tony,[2] his then-wife Tanya,[3] MCM, and Graham Savings Financial Corporation ("GSFC"),[4] seeking court-ordered foreclosure of its criminal judgment restitution liens on five parcels of real property in which Tony has an interest. The government requests that the proceeds of each foreclosure sale be distributed in the following order:

> (1) costs, expenses, and fees incurred in the sale of each property; (2) ad valorem taxes due on each property; (3) lienholders with a first-in-time-and-right interest superior to the United States' criminal restitution judgment lien; and (4) the remainder to the Clerk of the Court for the Northern District of Texas in partial satisfaction of the restitution judgment debt in *United States v. Tony Eugene Lyon*, No. 2:01-CR-079-J (N.D. Tex.)[.]

Compl. at 8.

The government later filed the instant motion for judgment on the pleadings under Fed. R. Civ. P. 12(c), or, alternatively, for summary judgment. MCM opposes the government's motion. It has also filed its own motion for equitable distribution of

---

[2]Tony has not answered or otherwise made an appearance in this case. On March 23, 2018 the clerk of court entered a default against Tony, and on April 23, 2018 the court entered a default judgment of foreclosure as to Tony's interests in the 180-acre homestead property. The final default judgment specifically notes that it "does not rule upon the interests, if any, of any other party, or any non-party person's interests, if any, in the [180-acre homestead property]." Apr 23, 2018 Final Default J. at 2.

[3]Tanya obtained a final decree of divorce from Tony on December 12, 2017.

[4]In 2006 GSFC recorded a deed of trust in Jack County on Tony and Tanya's 180-acre homestead property, which renewed and extended GSFC's first-in-time mortgage lien on the property.

foreclosure proceeds among all of Tony's victims, requesting, *inter alia*, that the court distribute any and all proceeds from the foreclosure sale *pro rata* among the victims named in the First and Second Restitution Orders. Tanya also opposes the government's motion and moves for partial summary judgment, seeking compensation for the foreclosure of her separate property interest in her homestead.

II

No objections have been filed with respect to the magistrate judge's findings, conclusions, and recommendation that the government is entitled to partial judgment on the pleadings and partial summary judgment to foreclose on the five pieces of real property in which Tony has an interest. Nor have objections been filed with respect to the magistrate judge's recommendation that the government is entitled to judgment on the pleadings against Tony and is entitled to summary judgment against GSFC. Having reviewed the pertinent parts of the findings, conclusions, and recommendations for plain error, and finding none, the court adopts these findings, conclusions, and recommendations to this extent.

III

The court now considers together the government's motion for judgment on the pleadings and/or summary judgment against MCM and MCM's motion for equitable distribution of foreclosure proceeds among all of Tony's victims.[5]

---

[5]Because the magistrate judge has correctly set out the standards for deciding a motion for judgment on the pleadings and a motion for summary judgment, the court does not repeat them here.

A

The government moves for judgment on the pleadings, or, alternatively, for summary judgment as to MCM, contending that courts have consistently held that the rule for priority of liens under federal law is that "first in time is the first in right," Gov't Br. 11; that the government's judgment liens recorded on the First Restitution Order in 2002 have priority over MCM's subsequent abstracts of judgment filed in 2017; and that MCM's equitable argument seeking payment from this action is neither a legal defense nor an impediment to this court's entry of judgment on the pleadings or summary judgment of foreclosure of the federal criminal judgment liens in favor of the United States.

In opposition, and in its own motion, MCM maintains that it does not oppose the government's effort to foreclose on the government's liens against Tony and does not contend that MCM's lien filed in 2017 supersedes the government's preexisting lien filed in 2002. Instead, according to MCM, it "seeks simply to participate in the proceeds of foreclosure as a criminal victim of [Tony] entitled to restitution pursuant to 18 U.S.C. § 3612(c), 18 U.S.C. §§ 3664(i)(j)(k) & (o), and 18 U.S.C. § 3613A." MCM Resp. Br. 1-2. MCM posits that the government's lien is a lien in favor of the United States; that there is no law establishing or suggesting that the "first in time" rule applies to how the government dispenses restitution funds that it has already collected by foreclosing on a lien in favor of the United States; that these distributions are governed by provisions of the Criminal Code that specifically address restitution and that provide for equitable distribution to all of an offender's victims, regardless of the chronological order of their victimization, with

consideration by the court of a variety of personal and economic factors; and that the equities in this case weigh in favor of a *pro rata* distribution of the proceeds of foreclosure.[6]

B

Absent binding Fifth Circuit precedent or even persuasive authority that is on point, the court must decide whether it has the authority to order a *pro rata* distribution of the proceeds derived from the foreclosure of a criminal restitution judgment lien where a second-in-time restitution order has been entered for the benefit of a different victim of a different, subsequent crime committed by the same criminal defendant. The court concludes that it does not.

The MVRA "makes restitution mandatory for certain crimes," *United States v. DeCay*, 620 F.3d 534, 539 (5th Cir. 2010) (citing 18 U.S.C. § 3663A(a)(1), (c)(1)(A)(ii)), and it sets forth detailed procedures for issuing and enforcing restitution orders, *see* 18 U.S.C. § 3664. The MVRA broadly authorizes the government to enforce a restitution order "in the same manner that it recovers fines *and by all other available means*." *United States v. Phillips*, 303 F.3d 548, 550-51 (5th Cir. 2002) (emphasis added) (citing 18 U.S.C. § 3664(m)(1)(A)(i)-(ii)). This includes collecting federal criminal debts "in accordance with the practices and procedures for the enforcement of a civil judgment under Federal law or

---

[6]In its motion, MCM also requests leave to conduct discovery to discern the extent of insurance compensation to Bank of America since 2005 so that any compensation that will be forwarded to Bank of America's insurers can be subordinated to the compensation of Tony's actual victims, including MCM. Because the court holds today that MCM is not entitled to *pro rata* distribution of the proceeds of foreclosure, it denies MCM's request for discovery.

State law." 18 U.S.C. § 3613(a).

Under 18 U.S.C. § 3613(c), "an order of restitution made pursuant to [the MVRA] is a lien in favor of the United States on all property and rights to property of the person fined as if the liability of the person fined were a liability for a tax assessed under the Internal Revenue Code of 1986." Accordingly, when the First Restitution Order was entered, there attached to Tony's property a lien that is treated "as if" it were a federal tax lien. When the Second Restitution Order was entered, there attached to Tony's property *a separate lien* that is also treated "as if" it were a federal tax lien.

Priority under federal law[7] is governed by the "first in time, first in right" rule as laid out in *United States v. New Britain*, 347 U.S. 81, 85 (1954). Under that rule, priority is given to the lien first perfected. *Id.* It is undisputed that the lien that attached as a result of the First Restitution Order was perfected before the lien that attached as a result of the Second Restitution Order.[8] Accordingly, the court concludes as a matter of law that, as between the two restitution orders in this case, the criminal debt owed under the First Restitution Order must be paid *before* the criminal debt owed under the Second Restitution Order is paid. *See, e.g., McAllen State Bank v. Saenz*, 561 F. Supp. 636, 640 (S.D. Tex. 1982) (prioritizing

---

[7]The priority of competing liens on property on which there is a federal tax lien is determined by federal law. *Aquilino v. United States*, 363 U.S. 509, 513-14 (1960).

[8]The lien that attached as a result of the First Restitution Order was also perfected before MCM's 2017 lien filed against Tony, but as MCM notes in its response brief, "MCM does not argue that its own private lien against [Tony] should take precedence against the government's lien." MCM Resp. Br. 2.

federal tax lien perfected on January 9, 1975 over federal tax lien perfected on April 11, 1975).

C

MCM contends that "[w]hen read together, the criminal restitution statutes indicate that all victims should be made whole in an equitable manner." MCM Br. at 10. In other words, MCM maintains that this court should fashion an equitable plan for dividing restitution payments made under the First and Second Restitution Orders to the victims of both orders, and should not prefer the victim under the First Restitution Order (Bank of America) over the victim under the Second Restitution Order (MCM). To support this argument, MCM first cites 18 U.S.C. 3612(c), which provides:

> [t]he Attorney General shall be responsible for collection of an unpaid fine or restitution concerning which a certification has been issued as provided in subsection (b). An order of restitution, pursuant to section 3556, does not create any right of action against the United States by the person to whom restitution is ordered to be paid. Any money received from a defendant shall be disbursed so that each of the following obligations is paid in full in the following sequence:
> (1) A penalty assessment under section 3013 of title 18, United States Code.
> (2) Restitution of all victims.
> (3) All other fines, penalties, costs, and other payments required under the sentence.

18 U.S.C. § 3612(c). MCM maintains that the requirement in 18 U.S.C. § 3612(c) that "any money" be disbursed to "all victims" "is a clean statutory endorsement of *pro rata* distribution." MCM Br. at 10. The court disagrees.

Section § 3612(c) requires that "all victims" receive restitution before "[a]ll other

fines, penalties, costs, and other payments required under *the sentence.*" *Id.* (emphasis added). The use of the definite article "the" in the term "the sentence" would not make sense had Congress intended the phrase "all victims" to include a victim of a *different* crime for which the defendant had been separately sentenced. A more natural reading of the statute is that the phrase "all victims" refers to the victims of the crime or crimes for which the defendant was then being sentenced and who were entitled to restitution under that sentence.

Moreover, as the magistrate judge correctly explained in the FCR:

> MCM's argument severs the term "victims" from its proper statutory context. The MVRA only refers to providing restitution to multiple "victims" in the context of a single restitution order entered by the sentencing court. *See, e.g.*, 18 U.S.C. § 3612(b)(G) (referring to "each victim to whom restitution is owed" in the context of "a restitution order"); *id.* § 3612(c)(2) (referring to "[r]estitution of all victims" in the context of "[a]n order of restitution"); *id.* § 3664 (provision entitled "Procedure for issuance and enforcement of order of restitution"); *id.* § 3664(f)(1)(A) ("In each order of restitution, the court shall order restitution to each victim in the full amount of each victim's losses as determined by the court and without consideration of the economic circumstances of the defendant."); *id.* § 3664(i) (plain language of subsection (i) limiting its application to one criminal "case"); *id.* § 3664(j)(1) (referring to "all restitution of victims" in the context of "the restitution order"); *id.* § 3664(k) (referring to "the victim or victims owed restitution" in the context of "[a] restitution order").

Dec. 3, 2018 FCR at 20.

MCM next relies on 18 U.S.C. § 3664(i) to support its request for *pro rata* distribution. This statute provides:

- 9 -

> [i]f the court finds that more than 1 victim has sustained a loss requiring restitution by a defendant, the court may provide for a different payment schedule for each victim based on the type and amount of each victim's loss and accounting for the economic circumstances of each victim. In any case in which the United States is a victim, the court shall ensure that all other victims receive full restitution before the United States receives any restitution.

18 U.S.C. § 3664(i). MCM argues that because this provision is included in a section entitled "procedure for issuance *and enforcement* of order of restitution," and because the statute is not specifically limited to "more than one victim *in a single case*," the court has the power to set equitable schedules for *all* victims requiring restitution by a single defendant, "with no requirement that the victims' names appear in the same case caption." MCM Br. at 10-11. The court again disagrees with MCM's reading of the statute.

As explained above, § 3664(i) is intended to apply only to victims in the same "case." *See also United States v. Caudle*, 2017 WL 2456989, at *2 (E.D. Va. June 6, 2017) (holding that § 3664(i) "cannot be used to prioritize the restitution order from one case over the restitution order from another case."). Moreover, although, as MCM argues, the statute *does* give the court the authority, under certain circumstances, to modify a defendant's payment schedule,[9] § 3664(i) clearly applies only to the issuance of the restitution order in the first instance. It says nothing about the power of a court to distribute foreclosure proceeds *pro rata* among the victims of crimes charged in separate criminal cases.

Finally, MCM argues that district courts have statutory and inherent authority to make

---

[9]*See, e.g.,* 18 U.S.C. § 3664(k) & (o); 18 U.S.C. § 3613A.

necessary equitable adjustments to restitution distributions. MCM relies on various provisions of the Criminal Code—18 U.S.C. § 3664(j)(1) (requiring all restitution be paid to victims before it is paid to any provider of compensation, such as an insurance company); 18 U.S.C. § 3664(k) (permitting court to adjust payment schedule or require immediate payment in full when there is any material change in the defendant's economic circumstances that might affect the defendant's ability to pay restitution); and 18 U.S.C. § 3613A(a)(1) (if defendant is in default on a payment of restitution, permitting court to "enter or adjust a payment schedule, or take any other action necessary to obtain compliance with the order of a fine or restitution")—and cites cases in which courts have utilized *pro rata* distributions of restitution where there were multiple victims of fraud.[10] Although MCM is correct that 18 U.S.C. § 3664 confers a certain degree of discretion on the court when it sentences the defendant and *enters* an order of restitution as part of the judgment,[11] and that the MVRA and the other statutes permit the court to adjust a defendant's *payment schedule* after an order of restitution has already been entered, the statutory provisions on which MCM relies do not provide the court with the authority to modify a prior restitution order for the benefit of the

---

[10]The cases MCM cites in its brief, *see* MCM Br. at 14, are distinguishable because none addresses a request for *pro rata* distribution among victims of *different* crimes subject to *different* orders of restitution.

[11]*See, e.g.,* 18 U.S.C. § 3664(i) (permitting court to provide for different payment schedule for each victim based on type and amount of each victim's loss, and accounting for economic circumstances of each victim); *id.* at 3664(h) (permitting court to make each defendant liable for payment of full restitution or to apportion liability among defendants to reflect level of contribution to victim's loss and economic circumstances of each defendant).

victim of a subsequent restitution order. In fact, the court's ability to modify a restitution order that has already been entered—which is essentially what MCM is seeking here—is extremely limited. *See United States v. Rooney*, 2014 WL 3865974, at *3 (N.D. Tex. Aug. 6, 2014) (Fitzwater, C.J.) ("Once the sentencing judge imposes a defendant's sentence, the district court has limited authority to revisit that sentence, and its authority must derive from a specific statute or rule." (quoting *United States v. Fromm*, 2014 WL 2864710, at *2 (N.D. Ill. June 18, 2014))). This is because "[a] restitution order, like the other components of a criminal sentence, is a final judgment, and it can be modified postjudgment only under limited circumstances." *Id.* (quoting *Fromm,* 2014 WL 2864710, at *2); *see also* 18 U.S.C. § 3664(o) ("A sentence that imposes an order of restitution is a final judgment[.]"). Because neither the MVRA nor the other criminal restitution statutes give the district court the authority to modify a restitution order to permit *pro rata* distribution to a victim of a separate, subsequent crime who later obtains a separate order of restitution, this court cannot, in the name of "equity," order the relief MCM requests.[12]

---

[12]MCM maintains that "[a]pplication of the 'first in time' doctrine to criminal forfeiture payments would have absurd results and lead to obvious inequities, because the conditions in which the 'first in time' rule evolved do not apply to this unique context." MCM Br. at 14-15. MCM reasons that, unlike lenders who have a duty to research prerecorded liens before they set terms for new loans, crime victims have no say in the timing or conditions of crimes committed against them. Although the court is not unsympathetic to the position in which MCM finds itself, it notes that, at least under the facts of *this* case, MCM would have had constructive knowledge of the existence of Tony's restitution obligation under the First Restitution Order no later than when the government filed its notices in 2002 and 2003. And to the extent the outcome of today's case is seen as unfair, it is the Congress who must remedy this shortcoming in the criminal restitution statutes, not this court through an unsupported interpretation of the law.

D

In sum, the court has concluded above that, when a defendant is obligated to make restitution under multiple federal criminal restitution orders, the liens that arise by virtue of these restitution orders must be prioritized according to the "first in time, first in right" rule. MCM appears to agree with this proposition, but urges the court to distribute the foreclosure proceeds on a *pro rata* basis to all of Tony's victims, rather than prioritize the first-in-time lien (i.e., the lien created by the First Restitution Order in favor of the United States for the benefit of Bank of America). MCM has failed to point to any statutory or other authority, however, that would permit this court to make the distribution that MCM requests. Accordingly, the court holds as a matter of law that the criminal debts that Tony owes under the First and Second Restitution Orders should be paid to the victims based on the "first in time, first in right" rule. The government's motion for judgment on the pleadings and/or summary judgment as to MCM is granted. MCM's motion for equitable distribution of foreclosure proceeds among all of Tony's victims is denied.

IV

The court next considers together Tanya's motion for partial summary judgment and the government's motion for judgment on the pleadings and/or for summary judgment against Tanya.

A

In its motion, the government contends that Tanya has admitted all of the elements needed to demonstrate that the federal foreclosure action against the Lyons' community

property is appropriate; that to the extent Tanya denies that her interest in the subject property is nonexempt, she is incorrect because the exclusive exemptions from a federal criminal judgment enumerated in 18 U.S.C. § 3613(a)(1) do not include homestead or community property; and that the court should neither deny foreclosure of Tanya's homestead nor award her 100% of the proceeds from the sale of her homestead, as she requests in her answer. In her response and in her own motion for partial summary judgment, Tanya contends that she has a separate property interest in her 200-acre rural homestead property, and she seeks an order providing that she be compensated for the forced sale of her homestead interest.

In footnote 7 of the magistrate judge's FCR, the magistrate judge stated:

> The Court notes that section III.B.2 of these Findings, Conclusions, and Recommendation does not foreclose the possibility that [Tanya] is entitled to some compensation for the loss of her standalone homestead rights in the 180-acre homestead property. Texas law apparently provides both a property interest in the real property on which homestead rights are impressed and homestead rights standing alone. However, the Court has not been presented with any argument regarding whether [Tanya] is entitled to compensation for her standalone homestead rights in light of [Tex. Fam. Code Ann. §] 3.202(c) and, if so, the appropriate methodology for calculating the value of her standalone homestead rights. Accordingly, the Court reserves making any findings, conclusions, or recommendation regarding whether the United States is entitled to judgment on the pleadings against [Tanya]'s interest in her standalone homestead rights until the issue is fully briefed.

Dec. 3, 2018 FCR at 17 n.7 (citations omitted). In the FCR the magistrate judge gave the parties 14 days from the date of an order adopting her recommendation to submit briefs

addressing this issue.

B

In its complaint, the government alleges that Tanya's "*Homestead Property* at 3100 Back Cemetery Road, Perrin, Jack County Texas" is legally described as:

> 180 acres out of T.E. & L. Company Survey No. 2558, Abstract No. 670, and T. E. & L. Company Survey N. 2559, Abstract no. 671 Jack County, Texas, described as follows, to wit:
>
> BEGINNING at the Southwest corner of T. E. & L. Company Survey no. 2559; THENCE East 1511 varas to corner in the South Boundary Line of T. E. & L. Company Survey No. 2558;
>
> THENCE North 672 varas to corner; THENCE West 1511 varas to corner in the West Boundary Line of T.E. & L. Company Survey No. 2559;
>
> THENCE South of 672 varas to the place of beginning.

Compl. ¶ 11 (emphasis added). In her answer to the complaint, filed on December 4, 2017, Tanya admits "the allegations contained in paragraph 8 through 20." Tanya Ans. ¶ 8. She now contends, based on a final decree of divorce entered on December 12, 2017, that her homestead is not limited to the 180-acre property at 3100 Back Cemetery Road identified in the complaint, but consists instead of 200 acres of rural homestead property.

With rare exception, a party is bound by the admissions in her pleadings. *See Davis v. A.G. Edwards and Sons*, 823 F.2d 105, 108 (5th Cir. 1987) ("[F]actual assertions in pleadings are . . . judicial admissions *conclusively* binding on the party that made them." (alterations in original) (quoting *White v. ARCO/Polymers*, 720 F.2d 1391, 1396 (5th Cir. 1983))). "Indeed, facts judicially admitted are facts established not only beyond the need of

evidence to prove them, but beyond the power of evidence to controvert them. A fact admitted by answer is no longer a fact in issue." *Hill v. Fed. Trade Comm'n*, 124 F.2d 104, 106 (5th Cir. 1941). Tanya admitted in her answer that her homestead property consists of the 180-acre property at 3100 Back Cemetery Road, and she has not sought to amend her answer based on the December 12, 2017 final decree of divorce. The court thus holds as a matter of law that Tanya's homestead consists of the 180-acre property described in ¶ 11 of the complaint.

C

As the magistrate judge correctly noted in her FCR, although the government is entitled to enforce its criminal judgment liens against Tanya's homestead property, it is required under Texas law to compensate Tanya for her undivided one-half interest in the homestead estate. *See Benchmark Bank v. Crowder*, 919 S.W.2d 657, 659 (Tex. 1996) ("The principal issue in this case is whether a third party may be subrogated to a federal government tax lien and thus, entitled to enforce the lien against the taxpayer's homestead. We conclude that the answer is yes, but that in selling the property through foreclosure, the third party must compensate a nondelinquent spouse for his or her interest in the homestead estate."); *see also In re Thaw*, 769 F.3d 366, 369 (5th Cir. 2014) ("[A] homestead interest may constitute a vested property right, and . . . a non-debtor spouse could be entitled to compensation from the sale of a property to which a homestead right attaches." (citation omitted)); *In re Odes Ho Kim*, 748 F.3d 647, 661 (5th Cir. 2014) ("Homestead rights have *some* value *to a spouse*, separate and apart from an ownership interest in the real property on

which homestead rights are impressed.").

Accordingly, the government's motion for judgment on the pleadings and/or summary judgment against Tanya is granted to the extent that the government seeks to foreclose its liens against property in which Tanya has an ownership interest, including her homestead.[13] The court also grants Tanya's motion for partial summary judgment to the extent she contends that she is owed compensation for her separate and undivided possessory interest in her homestead estate. The court re-refers this case to the magistrate judge for a determination of the amount (if any) that the government must remit to Tanya after her homestead is foreclosed.

* * *

Accordingly, for the reasons explained, the government's motion for judgment on the pleadings and/or summary judgment is granted, except to the extent the government suggests in its motion that it does not owe Tanya any of the proceeds from the sale of her homestead;

---

[13]To the extent that the government suggests in its motion that Tanya is not entitled to *any* compensation in connection with the sale of her homestead property, the government's motion is denied.

Tanya's motion is denied to the extent she contends that she is entitled to one-half of the proceeds from the sale of her homestead property. *See* Tanya Br. at 14. Although it is possible that Tanya will later be able to prove her entitlement to this amount, she has not established this fact beyond peradventure, as the summary judgment standard requires. *See Bank One, Tex., N.A. v. Prudential Ins. Co. of Am.*, 878 F. Supp. 943, 962 (N.D. Tex. 1995) (Fitzwater, J.) (To be entitled to summary judgment on a claim on which the moving party will have the burden of proof, the party "must establish 'beyond peradventure all of the essential elements of the claim[.]'" (quoting *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986))). The court is therefore unable to grant this requested relief at the summary judgment stage.

MCM's motion for equitable distribution of foreclosure proceeds among all of Tony Lyon's victims is denied; and Tanya's motion for partial summary judgment is granted in part and denied in part.

As a result of this memorandum opinion and order, all that remains to be decided is what amount (if any) Tanya is entitled to recover from the proceeds of the foreclosure of her homestead to compensate her for her interest in the homestead estate. The court re-refers this case to the magistrate judge for further proceedings consistent with this memorandum opinion and order and the magistrate judge's FCR (to the extent adopted in this memorandum opinion and order).

**SO ORDERED**.

March 14, 2019.

_____
SIDNEY A. FITZWATER
SENIOR JUDGE